UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTINE RIORDAN, as administrator
of the estate of SEAN CHRISTOPHER
RIORDAN, deceased,

                    Plaintiff,

v.

ERIE COUNTY, SHERIFF JOHN. C.
GARCIA, JOHN DOES 1-20,

                    Defendants.

**REPORT AND RECOMMENDATION**

Case No. 1:23-cv-584-JLS-JJM

---

        Before the court is defendants' motion for judgment on the pleadings [7][1] seeking dismissal of plaintiff Christine Riordan's Complaint, which asserts various claims arising from her son's detention at the Erie County Holding Center ("ECHC") and death in June 2022. This motion has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration. [2]. Having reviewed the parties' submissions [7, 11, 12], I recommend that the motion be granted in part and denied in part.

## BACKGROUND

        The following allegations are taken from plaintiff's Complaint, which are presumed to be true at this stage of litigation:

        Sean Riordan ("Riordan") was held at the ECHC from June 2 to June 5, 2022, following a traffic stop. Complaint [1-1], ¶7. Upon intake, Riordan was placed in a "detox" unit, a large cell for detainees experiencing drug or alcohol withdrawal. Id., ¶8. Within hours of

---

[1]     Bracketed references are to CM/ECF docket entries (unless otherwise noted). Page references are to CM/ECF pagination.

intake, Riordan began vomiting blood and requesting medical attention. Id., ¶9. He was eventually seen by a nurse, who - believing that Riordan was likely suffering from alcohol withdrawal - assessed him as "fine" and gave him a garbage can in which to vomit. Id. Riordan's condition continued to deteriorate, and he became increasingly delirious. Id., ¶10. Delirium tremens (commonly known as DTs) is a rare but serious symptom of alcohol withdrawal that can be fatal if left untreated. Id., ¶11. Riordan's withdrawal symptoms continued to worsen, including vomiting, anxiety/agitation, tremors, paroxysmal sweats, and seizures. Id., ¶12. Riordan experienced "at least two documented falls". Id.

On June 5, 2022, while still in custody at ECHC, Riordan went into cardiac arrest. Id., ¶15. An ambulance was called. Id., ¶16. Emergency medical responders were made to wait for nine minutes before being taken to Riordan. Id. Responders found Riordan cold to the touch, and his skin was mottled and blue. Id., ¶17. Riordan was intubated and brought to the hospital. Id. Riordan was declared brain dead days later, and was taken off life support on June 14, 2022. Id., ¶¶18-19.

Plaintiff alleges that defendants, all employees of Erie County, observed Riordan's deteriorating condition over the course of his four-day detention at ECHC and failed to provide him with necessary medical care. Id., ¶¶13, 15. Rather, defendants isolated, restrained, and used excessive force against him, causing him blunt force and other injuries. Id., ¶14. Plaintiff alleges that defendants failed at several stages to provide adequate medical care or otherwise react appropriately to Riordan's serious medical condition, whereas proper intervention would have prevented his death. Id., ¶¶20-25. Plaintiff further alleges that the failure to provide necessary medical care and respond appropriately to medical emergencies is a recurring and pervasive problem at ECHC. Id., ¶¶26-29.

On February 27, 2023, plaintiff served a notice of claim [11-4] on defendants. *See* Complaint [1-1], ¶30; Answer [1-2], ¶1. On June 13, 2023, plaintiff filed a Complaint [1-1] in New York State Supreme Court, County of Erie, asserting several claims:

(1) medical negligence and/or negligent supervision and training in the medical treatment of detainees as against all defendants (id., ¶¶45-47);

(2) wrongful death as against all defendants (id., ¶¶48-53);

(3) a 42 U.S.C. §1983 claim for deliberate indifference to a serious medical need negligence as against all defendants (id., ¶¶54-61);

(4) a claim pursuant to Monell v. Department of Social Services, 436 U.S. 685 (1978), for various alleged policies, customs, patterns, and practices relating to medical and other treatment of detainees as against defendant Erie County (id., ¶¶62-68);

(5) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.* (1990), as against defendants Erie County and Sheriff Garcia (id., ¶¶69-76);

(6) a §1983 claim for excessive force as against the John Doe defendants (id., ¶¶77-82);

(7) failure to intervene as against unspecified defendants (id., ¶¶83-88);

(8) assault as against the John Doe defendants (id., ¶¶ 89-93);

(9) battery as against the John Doe defendants. Id., ¶¶ 94-96.

Plaintiff's Complaint incorporates by reference a 2018 investigation report by the New York State Commission of Correction, a 2009 U.S. Department of Justice lawsuit against Erie County and the Erie County Sheriff (United State of America v. Erie County, New York, Case No. 1:09-cv-849-WMS-JJM), the lawsuit's December 2014 settlement, as well as comments to the media by Sheriff Garcia. Id. at ¶¶1-4.  Plaintiff demands economic and non-economic damages, punitive damages as against Sheriff Garcia and the John Doe defendants, attorney's fees, and other declaratory and injunctive relief. Id. at 24-25.

On June 23, 2023, defendants Erie County and Sheriff Garcia filed an Answer [1-2] denying the Complaint's material allegations, asserting various defenses, and appending documents relating to the resolution of the U.S. Department of Justice lawsuit against the County of Erie. Defendants filed a notice of removal [1] on the same day. Defendants filed this motion for judgment on the pleadings on July 12, 2023 [7].

## DISCUSSION

Defendants move for judgment on the pleadings dismissing each of plaintiff's nine claims, citing 11 grounds. Defendant's Memorandum of Law [7-2] at 3-4. I discuss each in turn.

**A.      Standard of Review**

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics, 259 F.3d 123, 126 (2d Cir. 2001); see Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). "To survive a Rule 12(c) motion, plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." Lynch, 952 F.3d at 75 (internal quotation marks omitted). In making this assessment, the court should "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor". Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009); see Lively v. WAFRA Investment Advisory Group, Inc., 6 F.4th 293, 301 (2d Cir. 2021).

B.    **Statute of Limitations and State Tort Claims Against the Sheriff Defendants**

Defendants argue that the state tort claims against the Sheriff and his deputies must be dismissed as time barred by the one-year statute of limitations applicable to tort claims against a sheriff. Defendant's Memorandum of Law [7-2] at 5-6. Defendants concede that plaintiff's claims against Erie County, as well as those for wrongful death and civil rights violations, are timely. Id. at 6; Reply [12] at 2, ¶6.

Plaintiff argues that her deadline to file this action was tolled by Riordian's death and/or his insanity at the time the cause of action accrued. [11] at 4-5. Riordan was held at the ECHC from June 2 to June 5, 2022. Id. at 6-7. Riordan was "declared brain dead days later" and ultimately taken off life support on June 14, 2022. Id. at 8, ¶¶18-19. The summons and complaint in this case were filed in Erie County Supreme Court on June 13, 2023. [1-1].

New York Civil Practice Law and Rules ("CPLR") §215 requires that "an action against a sheriff, coroner or constable, upon a liability incurred by him by doing an act in his official capacity or by omission of an official duty" shall be commenced within one year. N.Y. CPLR §215(1). Any acts or omissions by Sheriff personnel would have necessarily occurred on or before June 5, 2022 - Riordan's last day at ECHC. Plaintiff's filing of this action on June 13, 2023 was more than one year beyond that date.

However, as plaintiff points out, CPLR §210 provides that "[w]here a person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of action survives, an action may be commenced by his representative within one year after his death". N.Y. CPLR §210(a). This tolling provision prevails over another general rule. See Perez v. Baez, 185 A.D.3d 1062, 1063 (2d Dep't 2020); see generally N.Y. CPLR §201 ("[a]n action . . . must be commenced within the time specified in

this article *unless a different time is prescribed by law*") (emphasis added). Logically, Riordan's death occurred at some point subsequent to any act or omission by Sheriff's personnel, and therefore the one-year post-death filing deadline of §210(a) would apply.[2]

Therefore, the critical question is when Riordan died. Plaintiff presumes Riordan's death to be contemporaneous with his being taken off "life support" on June 14, 2022. *See* Plaintiff's MOL [11] at 5. However, this presumption is called into question by plaintiff's further allegation that Riordan was "declared brain dead" at some point "several days" earlier. Complaint [1-1] at 8, ¶18; *see* 10 N.Y.C.R.R. §400.16 (defining death to include the "irreversible cessation of all functions of the entire brain, including the brain stem"); Ajnoha v. JC Penney Life Insurance Company, 480 F. Supp. 2d 663, 673 (E.D.N.Y. 2007) ("[a] person diagnosed with irreversible cessation of all brain function is commonly referred to as 'brain dead'").[3]

"[A] statute of limitations argument is an affirmative defense for which the defendant bears the burden of proof." Browe v. CTC Corp., 15 F.4th 175, 190 (2d Cir. 2021). Since defendants offer no opinion on the time of Riordan's death, I recommend that this ground for dismissal be denied, without prejudice to its renewal upon a later motion with the proper evidentiary foundation.

---

[2] Plaintiff also argues that the statute of limitations was tolled by Riordan's temporary "insanity" pursuant to CPLR §208. [11] at 5. Regardless of whether and for how long that condition existed, such condition would necessarily have ceased at the time of Riordan's death and thus does not provide plaintiff any greater tolling relief than CPLR §210(a).

[3] Plaintiff's assertion that Rioridan was on "life support" for a period of time after brain death also confuses the issue. [1-1] at 8, ¶18. While the phrase "life support" is commonly used to refer to breathing machines and other medical interventions, a brain-dead patient cannot be on "life support" since the patient is legally and medically dead. *See*, *e.g.*, Yale Interdisciplinary Center for Bioethics, *Brain Death, Frequently Asked Questions for the General Public*, https://bioethics.yale.edu/sites/default/files/files/Brain%20Death%20FAQ%20-%20final%20posted.pdf (accessed Dec 18, 2023) at 1.

C. **Respondeat Superior Liability of Sheriff's Personnel as to Erie County**

Defendants argue that, because Erie County bears no vicarious liability for the acts or omissions of Sheriff Department's personnel, "all tort-based causes of action against the [County] . . . must be dismissed". [7-2] at 6-8.  In response, plaintiff concedes the general rule that the County is not vicariously liable for the acts or omissions of the Sheriff or his deputies, but argues that there are sufficient allegations which, if proven, would give rise to liability on the part of the County. [11] at 5-8. I agree with the plaintiff.

Plaintiff's Complaint raises several claims that implicate either the County directly or indirectly through its employees. She alleges that the John Doe defendants, whose alleged acts or omissions comprise most of the various tort claims, "were hired and/or employed by defendants, Erie County". [1-1] at ¶38.  Under New York law, "[a]n employer is vicariously liable for its employees' torts, even where the offending employee's conduct was intentional, if the acts were committed while the employee was acting within the scope of his or her employment". Carnegie v. J.P. Phillips, Inc., 28 A.D.3d 599, 600 (2d Dep't 2006); *see also* Dawson v. County of Westchester, 351 F. Supp. 2d 176, 187 (S.D.N.Y. 2004) (applying vicarious liability analysis to a county). While it seems likely that some or even several of the John Doe defendants will be revealed to be Sheriff's Department employees, if even one of them is a County employee, the County would face vicarious liability.

Moreover, plaintiff points out that the County also has an independent duty under state law to "maintain a county jail as prescribed by law". County Law §217. This duty has been held to be "distinguishable from [the] Sheriff's duty to 'receive and safely keep' prisoners in the jail over which he has custody." Freeland v. Erie County, 122 A.D.3d 1348, 1350 (4th Dep't 2014). State courts have held that this provision imposes on the County a duty to "protect

inmates [from] risks of harm that are reasonably foreseeable". Villar v. County of Erie, 126 A.D.3d 1295, 1296 (4th Dep't 2015); *see also* Ball v. County of Erie, 2021 WL 5903308, *4 (W.D.N.Y. 2021). Therefore, I recommend this ground for dismissal be denied.

**D.**     **County Liability for Hiring, Training, Supervising, Retaining Sheriff's Deputies**

Defendants argue that the County has no role in hiring, supervising, or training Sheriff's deputies, such activities being in the exclusive purview of the Sheriff, and as such those claims and the Monell claim must be dismissed. [7-2] at 8-10. I do not agree.

As discussed above, the Complaint alleges tortious actions with respect to the County's training and supervision of its own (non-Sheriff) employees, as well as alleging that certain acts or omissions were the result of policies or customs attributable to the County. *See* Harford v. County of Broome, 1999 WL 615190, *5 (N.D.N.Y. 1999) ("the County may be held liable 'when the municipality itself commits the misdeed, that is, when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury'") (*quoting* Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992)). Further, under Monell,[4] the County can be liable "[even when] the sheriff or his deputies are acting as final policymakers [for the County] or pursuant to County policy or custom". Id. Therefore, I recommend this ground for dismissal be denied.

**E.**     **Sufficiency of Plaintiff's Allegations**

Defendants argue that plaintiff's allegations are too conclusory to plausibly state claims for constitutional violations and other tortious acts or omissions. [7-2] at 10-11.

---

[4]     Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).

Specifically, defendants argue that plaintiff makes no factual allegations describing the defendants' "willful and deliberate indifference", failure to monitor, or failure to provide adequate medical care. Id. at 10. Defendants also question the sufficiency of plaintiff's allegations that defendants failed to train, supervise, hire and dismiss employees. Id. at 11.

Plaintiff responds that this argument ignores her factual allegations, both expressly stated and incorporated by reference, regarding defendants' negligence with respect to their treatment of Riordan, and more generally with respect to their medical treatment of detainees. [11] at 9-12. Alternatively, plaintiff requests an opportunity to amend the Complaint to the extent her claims are found insufficient. Id. at 9.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In so doing, courts "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference". Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). "The proper question is whether there is a permissible relevant inference from 'all of the facts alleged, taken collectively[.]'" Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854 (2d Cir. 2021).

Defendants interpret plaintiff's allegations regarding medical negligence, medical supervision, and deliberate indifference too narrowly. Read as a whole, the Complaint lays out a case that there is a history of failure to provide necessary medical care at ECHC as substantiated by investigations by the New York State Commissions of Correction and U.S. Department of

Justice, which are incorporated by reference. [1-1] at 5-6, 9-10. The Complaint then goes on to describe Sean Riordan's experience at ECHC, alleging that he was suffering a serious and obvious medical emergency, he did not receive adequate medical treatment from staff despite their awareness of his condition, his condition deteriorated, and he ultimately died from that condition. Id. at 6-8.

Under the Fourteenth Amendment standard applicable to pretrial detainees, deliberate indifference to a serious medical need "can be established . . . by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to the plaintiff's health or safety'". Charles v. Orange County, 925 F.3d 73, 87 (2d Cir. 2019). A sufficiently serious risk to health or safety "can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain". Ibbison v. Quiros, 2023 WL 1766440, *12 (D. Conn. 2023).

Knowledge or constructive knowledge can be established by allegations that the defendant in question witnessed or otherwise knew about the detainee's condition and failed to act. See Samuels v. Fischer, 168 F. Supp. 3d 625, 650 (S.D.N.Y. 2016) ("the [*mens rea*] prong is fulfilled because, by knowing - whether from seeing his injuries, hearing about the beating, speaking with Nugent, or anything else - about Plaintiff's need to go to an outside medical facility but yet leaving him to suffer in a van for hours, these Defendants were 'aware of a substantial risk [of] serious inmate harm' and yet 'fail[ed] to act'")[5]. These allegations are

---

[5] Samuels applies the more demanding Eighth Amendment standard and thus a similar showing should be sufficient under the Fourteenth Amendment. See Darnell, 849 F.3d at 29 ("[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner'") (*quoting* City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

sufficiently articulated here. Therefore, I recommend denial of defendants' motion on this ground.[6]

## F.   Plaintiff's Monell Claim

Defendants argue that plaintiff's Monell claim should be dismissed because she does not sufficiently allege that Riordan was subjected to an unconstitutional act, who was responsible for the alleged acts, or the official policy or custom that underlies such acts. [7-2] at 11-12.  I disagree for the reasons articulated by plaintiff. *See* plaintiff's Memorandum of Law [11] at 12-14.

As discussed above, plaintiff has sufficiently pleaded the constitutional violation of deliberate indifference to a medical need. *See* §E. Plaintiff has also alleged that those violations were committed by various unidentified employees of the Sheriff and/or County. See Davis v. Kelly, 160 F.3d 917, 921 (2d Cir. 1998) ("[courts] typically resist dismissing suits against the John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials").

Finally, "a §1983 plaintiff need not prove that his injury was caused by an explicitly stated municipal rule or regulation". Outlaw v. City of Hartford, 884 F.3d 351, 372 (2d Cir. 2018).  "The existence of a municipal policy may be established in one of four ways: (1) a

---

[6]    I am skeptical of the sufficiency of plaintiff's factual allegations regarding excessive force, assault and battery, as the Complaint is largely devoid of any details about any such occurrence(s) or the basis for plaintiff's belief that such incidence(s) occurred. Complaint [1-1], ¶ 14 ("instead of providing Sean medical aid, defendants used excessive force against him, and unlawfully . . . restrained him, which caused blunt force trauma and other injuries); s*ee* Lewis v. Huebner, 2020 WL 1244254, *6 (S.D.N.Y. 2020) ("Plaintiff's claim that Marlow used 'excessive force to put [her] in a wheelchair' fails because it is a classic example of a conclusory allegation"); Gulley v. Lizon, 2019 WL 1559432, *3 (D. Conn. 2019) ("[a] conclusory statement is insufficient to state a plausible claim for use of excessive force"). However, the sufficiency of these claims is not addressed by either party's brief, so I do not recommend their dismissal at this time.

formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates with scienter that such failure may foreseeably lead to specific types of constitutional violations." Beckwith v. Erie County Water Authority, 413 F. Supp. 2d 214, 225 (W.D.N.Y. 2006). Certainly, "[i]t is unlikely that a plaintiff would have information about [a municipality's] training programs or about the cause of the misconduct at the pleading stage". Amnesty America v. Town of West Hartford, 361 F.3d 113, 130, n. 10 (2d Cir. 2004). Nevertheless, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists". Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Plaintiff adequately alleges such facts here. She alleges that there is a pervasive history of failure to provide adequate medical care at ECHC, referencing and incorporating by reference reports to that effect from the New York State Commissions of Correction and others, a U.S. Department of Justice lawsuit against Erie County and the former Erie County Sheriff, and providing a list of persons who allegedly have died in Erie County custody since 2005. [1-1] at 5-6, 26; see Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) ("the DOJ Report appended to Plaintiff's Complaint is sufficient to allege a widespread practice at [Westchester County Jail] of which policymakers were aware").

Plaintiff also references comments made by Sheriff Garcia that, on their face, seem to indicate an awareness of this ongoing problem and an institutional failure to address it. See Raina Lipsitz, *The New Republic*, "Why Do People Keep Dying in Erie County's Jails?"

https://newrepublic.com/article/171009/erie-county-sheriff-garcia-howard (March 31, 2023) ("[w]e're set up to fail," Garcia told The New Republic. "We don't have the means to give individuals that come through the doors adequate medical help"); see Laboy v. Ontario County, 318 F. Supp. 3d 582, 590 (W.D.N.Y. 2018) (relying on a prosecutor's statements to support an inference of a municipal policy or custom favoring warrantless arrests).

Plaintiff thus alleges that Riordan's deficient medical care was the result, at least in part, of a County custom, policy, or practice. She further alleges that Riordan's experience at ECHC and ultimate death was an example of adherence to such custom, policy, or practice. Id. at 5-12, ¶¶5-29, 39. These allegations are sufficient at this stage of litigation to maintain a Monell claim. Accordingly, I recommend this ground for dismissal be denied.

G.   Plaintiff's ADA Claim

Defendants argue that plaintiff's ADA claim should be dismissed as "duplicative" of the deliberate indifference claim. [7-2] at 12. Defendants' three-sentence contribution on this point is devoid of any citation to law or fact, and their reasoning is not otherwise obvious to me. For this reason alone, this argument should be rejected. See, e.g., United States v. Botti, 711 F.3d 299, 313 (2d Cir. 2013) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); Sioson v. Knights of Columbus, 303 F.3d 458, 460 (2d Cir. 2002) ("[t]o make a legal argument is to advance one's contentions by connecting law to facts").

In any event, the argument is without merit, as Section 1983 and the ADA are two separate statutory regimes and provide independent avenues for relief. See, e.g., Allah v. Goord, 405 F. Supp. 2d 265, 272-281 (S.D.N.Y. 2005) (denying dismissal and allowing both an ADA discrimination claim and §1983 deliberate indifference claim to proceed); Hallett v. New York

State Dep't of Corr. Servs., 109 F. Supp. 2d 190, 198-202 (S.D.N.Y. 2000) (same). I therefore recommend denial of this ground for dismissal.

### H.   Compliance with General Municipal Law §50-h

Defendants argue that plaintiff failed to submit to an examination under oath prior to commencing suit as required by General Municipal Law §50-h, and thus her pendent state law claims must be dismissed. [7-2] at 12-13.  For the following reasons, I recommend that this ground for dismissal be denied pending further development.

First and foremost, this is a motion for judgment on the pleadings, and the pleadings in the case are silent as to the facts and circumstances regarding plaintiff's compliance with General Municipal Law §50-h.  On a motion for judgment on the pleadings, a court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference" (McCarthy v. Dun & Bradstreet Corporation, 482 F.3d 184, 191 (2d Cir. 2007); *see also* Arroyo v. City of Buffalo, 2017 WL 3085835, *3 (W.D.N.Y. 2017)), as well as any uncontroverted allegations plead in the answer. *See* Keita v. American Security Insurance Company, 2021 WL 5865734, *1 (E.D.N.Y. 2021); *see also* Rule 12(c)-(d).

Unlike compliance with General Municipal Law §50-e regarding notice of claim, there is no requirement that plaintiff affirmatively plead compliance with §50-h, although she may choose to do so. *See* Williams v. City of Syracuse, 2023 WL 1071437, *5 (N.D.N.Y. 2023) ("[u]nder Fed. R. Civ. P. Rule 9(c), 'plaintiff *may* aver generally that all conditions precedent to suit have occurred, and any denial by defendant must be made specifically and with particularity'") (emphasis added); *cf.* N.Y. General Municipal Law §50-i(1) (requiring an

-14-

allegation of compliance only with §50-e). Plaintiff declined to do so here, and defendants adduced no contrary facts in their answer.

Moreover, any failure to comply with Section 50-h precludes only the claims against the County itself, not the Sheriff, Sheriff's employees, or County employees. *See* General Municipal Law §50-h(5) ("no action shall be commenced against the city, *county*, town, village, fire district or school district against which the claim is made unless the claimant has duly complied with such demand for examination") (emphasis added); Williams v. City of Syracuse, 2023 WL 1071437, *7 (N.D.N.Y. 2023) ("the Court finds that Section 50-h does not apply to Plaintiff's state-law claims against the individual [municipal] Defendants"); *but see* Kluczynski v. Zwack, 170 A.D.3d 1656, 1657 (4th Dept. 2019) (dismissing "the complaint against defendants, who were acting within the scope of their duties as municipal employees" due to noncompliance with Section 50-h). Thus, when and if plaintiff's noncompliance with Section 50-h is established, more briefing is needed regarding which specific claims (if any) should be precluded.

I.   **Official Capacity Claims**

Defendants argue that the Complaint should be dismissed with respect to any claims against Sheriff Garcia in his "official capacity". [7-2] at 14-16. Plaintiff concedes that such claims are not cognizable under 42 U.S.C. §1983 and are redundant of the claims against the County. [11] at 14, FN 1. Therefore, to the extent the Complaint asserts claims against Sheriff Garcia and the John Doe defendants in their official capacities, those claims should be dismissed. *See, e.g.*, Nolley v. County of Erie, 2008 WL 859165, at *7, FN 1 (W.D.N.Y. 2008) ("Plaintiff's official capacity claims against the individual defendants who are officials or

employees of ECHC are therefore considered to be redundant of his claims against the County of Erie and accordingly will be dismissed").

## J. Notice of Claim - Naming of Defendants

Defendants argue that plaintiff's pendent state claims as against any individual defendant other than Sheriff Garcia must be dismissed because those defendants were not specifically named in the Section 50-e notice of claim. [7-2] at 16-17. The Notice of Claim names only Erie County, Erie County Sheriff's Department, Sheriff John C. Garcia, and John Doe. [5].

Plaintiff argues that the case law cited by defendants is outdated, and that more recent decisions have changed course and found that a failure to name individual municipal employees is not preclusive. Plaintiff's Memorandum of Law [11] at 21-22. I agree. While earlier caselaw held that "General Municipal Law § 50-e makes unauthorized an action against individuals who have not been named in a notice of claim", Tannenbaum v. City of New York, 30 A.D.3d 357, 358 (1st Dept. 2006), that rule has since been abrogated in all four departments of the New York State Appellate Division. See Wiggins v. City of New York, 201 A.D.3d 22, 25 (1st Dept. 2021) ("we now join our sister Departments in holding that section 50-e does not mandate the naming of individual municipal employees in a notice of claim"). This new approach has been adopted by the federal courts. See Matthews v. City of New York, 2016 WL 5793414, *10 (S.D.N.Y. 2016) ("this court agrees with the more recent district court decisions on this matter and finds that failure to name individual defendants in a notice of claim is not an independently sufficient ground for dismissal").

Accordingly, I recommend denial of the motion to dismiss on this ground.

K.    **Punitive Damages**

Defendants argue that punitive damages are not recoverable against municipal defendants, and that any such claims must be dismissed. [7-2] at 17. Plaintiff responds that it has not demanded punitive damages from a municipal defendant, only against the individual defendants. [11] at 17. I agree with plaintiff's reading of the Complaint (*see* [1-1] at 24 (relief requested item c)), and accordingly recommend denial on this ground.

L.    **Notice of Claim - Negligent Hiring, Training, Supervision**

Defendant argues that plaintiff's claims for negligent hiring, training, supervision, discipline, retention and promotion must be dismissed because they were not asserted in her Section 50-e notice of claim. [7-2] at 18-20. Plaintiff responds that she did assert such claims in the Notice of Claim. [11] at 18-19. I agree with plaintiff.

> The Notice of Claim states that:
>
> "the incident herein described and damages sustained were caused as a result of the negligence, carelessness, recklessness and/or lawful conduct on the part of the agents, servants and/or employees of ERIE COUNTY and/or ERIE COUNTY SHERIFF'S DEPARTMENT . . . among other things . . . in their failure to properly and adequately train, supervise, instruct its employees, staff and/or police officers with regard to the proper and timely medical treatment of inmates." Notice of Claim [5] at 3-4, ¶6.

General Municipal Law §50-e merely requires a claimant to set forth "(1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained so far as then practicable." §50-e(2). "The statute does not require 'those things to be stated with literal nicety or exactness.'" Brown v. City of New York, 95 N.Y.2d 389, 393 1080 (2000) (*quoting* Purdy v. City of New York, 193 N.Y

-17-

521, 523 (1908)). "The test of the sufficiency of a Notice of Claim is merely 'whether it includes information sufficient to enable the city to investigate'". Id. (*quoting* O'Brien v. City of Syracuse, 54 N.Y.2d 353, 358 (1981)). The Notice of Claim here plainly does so with respect to these claims. Therefore, I recommend that this ground for dismissal be denied.

## CONCLUSION

For the above reasons, I recommend that defendants' motion for judgment on the pleadings [7] be granted only with respect to the dismissal of any official capacity claims against the individual defendants and otherwise be denied.

Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by February 27, 2024. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: February 13, 2024

<u>/s/ Jeremiah J. McCarthy</u>  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge